Good morning, Your Honors. Gretchen Wolfinger for the appellant Jean Noll. I'm reserving four minutes for rebuttal. The issue in this case is whether it clearly violated, it violated clearly established law for Agent Noll, acting pursuant to standard procedure, to accompany Ms. Ioane to the restroom during the execution of a search warrant when weapons had been found on the crime scene. There are very small pieces of evidence. Clearly established law was not violated and although the district court found to the contrary, recent Supreme Court cases indicate where the district court went wrong. Why was Ms. Ioane treated differently than her husband? I believe that what we have to look at in this case is whether Agent Noll acted objectively, reasonably, regardless of whether there were other alternatives available. Do you know the answer why her husband, who was the target of the investigation, was able to go to the bathroom, not be watched, while his wife, who wasn't the target of the investigation, who had no, they didn't do a pat-down search from what I can tell, went in, had somebody not only stand there and watch her, but you know, according to the facts, pull her dress up, I guess all the way up to around, I'm pointing to just below my neck, where her husband, who was the target, they didn't do that. I'm just, I'm just curious, especially when she wasn't detained. First, I would say that Agent Noll followed standard procedure. It is unclear to me. Is that standard procedure when someone is not detained? And if it's standard procedure, why didn't they follow that with her husband? I don't know why it wasn't followed with her husband. It seems to undermine and question whether it really was standard procedure if they didn't do it with her husband. No, I don't believe it does undermine it, Your Honor. Number one, she cannot be, I guess, bear the burden of another agent during a search not following standard procedure. Just because another agent chose another alternative does not mean that the procedure she followed was not objectively reasonable. Where is it, is there, did you submit a policy, a handbook, or where it says that's the procedure for someone who's not detained? No, that procedure is described in the Declaration of Agent Noll, which was made under penalty of perjury. I would note that the district court did not discuss the policy and opposing counsel have not contested that that was, in fact, the standard policy. Well, can I ask, if she didn't ask to go to the bathroom, she just, she's not a target, she's sitting there, could Agent Noll have done the exact same search? If she's not... If she didn't ask to go to the bathroom and she's sitting around... Oh, I see. And Agent Noll decides, I'm gonna search her to see if she has guns or if she's got discs or thumb drives, that sort of thing, and has her disc robed so she can The answer is yes, but I would clarify that, of course, there would be some privacy. She wouldn't do an initial pat-down or a search in front of the other agents or the other people in the house. Why would she not do a pat-down at all? It doesn't, it doesn't quite... I'm trying to reconcile, trying to figure out what happened here. Why not do a pat-down if she has the concerns that she has that caused her to go into the bathroom and witness her and make her pull her dress all the way up to the top? I don't know why an initial pat-down was not done. It appears that way from the record, but I don't believe the record is clear. I also don't know if Agent Noll was in charge of conducting any initial... But would that make sense to do that before she went into the bathroom as part of, you know, what was her concern was? It might have made sense, but if one was not She was, since Miss Ione was free to go, she didn't, she could have walked out the door and walked out to the 7-Eleven to go to the bathroom. Is that right? Yes. And they, whatever concern that Miss, that your client had, it wouldn't, would not have, I mean, she could have, if she really was hiding something under her sundress, she would have been able to walk out the door, but yet if she went to her bathroom in her own house without a suite being conducted in the bathroom and without her being searched, she, your client, was to stand in there and watch her? I just, it doesn't make any sense to me. What we have to look at is confronted with those circumstances was what Agent Noll did objectively reasonable, and it was the fact that there may have been... How is it objectively reasonable? Because there may have been other circumstances that would have occurred. She could have left, but she didn't. She wouldn't have been allowed to come back, but Agent Noll wasn't confronted with that. She was confronted with a person who wanted to go to the bathroom and there were safety and evidentiary concerns involved. That's what I'm trying to get at, though. If there were safety and evidentiary concerns involved, why didn't she do a pat down or sweep the bathroom? I see that I'm into my rebuttal time. May I continue, Your Honor? Go ahead. I don't know that she was in charge of doing an initial pat down. All the record reflects is that when she went to the bathroom, she was the agent charged with accompanying Agent Noll, and she was faced with both security and evidentiary concerns that led to... I guess, what was the articulable basis for the agent to believe that Ms. Ione had weapons or evidence hidden on her person? Weapons had already been found on the premises. The record indicates that there were two doors to the bathroom, so if she wasn't monitored, she could have left the bathroom. She could have left anyway. She could have left and gone into the house and either disturbed the search, startled other agents, or weapons were found in a safe to which Ms. Ione had the combination subsequent to the initial sweep and subsequent to her using the bathroom. Also, the items of evidence that were found were very tiny and could have been hidden on her body. You want to address qualified immunity? Yes, Your Honor. I'm into my rebuttal time, but I'll... Go ahead. I'll do that now. It was not clearly established that the law at the time prohibited Agent Noll's conduct. I think that's clear from the Casella case, and it's also clear from District of Columbia v. Wesby. The district court defined the constitutional right very broadly, a right to privacy or absent a valid reason. Could Agent Noll do what she did? Well, the Casella was an excessive force case, and I understand it just recently came down, but they specifically emphasized that in excessive force cases what they were, what was their primary concern. It seems like it emphasized the use of excessive force in an area of law in which the result depends very much on the facts of each case, and officers are often forced to make split-second judgments in tense, uncertain, and rapidly evolving situations. That's the excessive use of force case. Here it seems like she was arguing that she was acting according to policy. Policies don't seem to be the same as the excessive force cases where they're developed in split-second judgments in tense. So does that Casella case really squarely govern us here? Certainly if you feel that Casella does not, the Wesby case does, but I believe that Casella provides a general framework of analysis, and conducting a search warrant is a dynamic, evolving situation, which we know from the record. Michael Ioni called the police, which was certainly, local police, certainly very unexpected, and created some disruption of the search. So I think the analysis is the same, the general analysis. If I could reserve one minute for rebuttal, Your Honors. Good morning, and may it please the Court. Norbert Gazzarian, certified law student on behalf of Shelley Ioni, and with the Court's permission, I would like to split my time in half with Ms. Ariel Beverly, who is also a certified law student. All right. Your Honors, I will be discussing the constitutional violation prong of qualified law. Could you make sure you talk into the microphones there? I don't know if you can, I think they'll bend up a little bit. Of course, Your Honor. Thank you. I will be discussing the constitutional violation prong of qualified immunity, and Ms. Beverly will be discussing the clearly established prong of qualified immunity. Your Honors, Ms. Ioni was made to lift up her dress, pull down her underwear, exposing her privates to an armed stranger in her son's bathroom, and despite her pleas for privacy, the stranger stood close by watching as Ms. Ioni urinated or defecated in the toilet. The ritual of degradation that occurred here clearly violated Ms. Ioni's constitutional rights to bodily privacy and unreasonable searches, and it is in light of these egregious facts that the government now tries to justify Agent Knowles' conduct. However, these justifications do not warrant the nature and manner of Agent Knowles' conduct. What do we make of, if she was free to leave, but she consented to the terms of the search, including, I guess, the bathroom monitoring, isn't that implicit by staying? How does that impact our analysis? Your Honor, I don't think staying would make Agent Knowles, or having the option to stay would make Agent Knowles' conduct reasonable because, as the government also noted in their brief, if she needed to use the bathroom and she couldn't leave and use it in time somewhere else, then we can't say that just because she can stay or she can leave that that would make this degrading search and invasion of bodily privacy then reasonable. Your Honor, also, I would like to show that... Can you tell me, if it's in the record, it seems to be confused as to was she totally disrobed, partially disrobed, momentarily disrobed? It's unclear from the record because initially, I think the plaintiff is saying she had to undress. And then later, there's a suggestion that she was required to hold up a sundress. Sure. So, in Ms. Sion's deposition summary, Your Honor, she says that she was ordered to pull up her sundress and then necessarily have to pull down her underwear in order to use the restroom. So, as to the amount of exposure, that would essentially expose her to a great proportion of her body as well, and in close proximity as well. Your Honor, as a point that I wanted to make as well, Rattel itself states that had the officers in that situation held the plaintiffs in the room naked for any longer than was even if there was an arguable justification for this strip search being evidentiary safety purposes, then that justification was necessarily dissipated once Agent Knoll ordered Shelley to lift up her dress, lift down her underwear, and confirm that she was hiding neither weapons or evidence on her person. And at that point, the search had to end, and continuing it served no government justification, and was unnecessary. What about, she says it was her procedure or policy that that was standard. Well, Your Honor, there has been no record evidence of procedure other than the affidavit, and as well, even if it was procedure, procedure in Franklin shows that procedure can be applied unreasonably as well. Your Honors, if there's no further questions, I would like to save the rest of my time for Ms. Beverley. Good morning, Ariel Beverley, certified law student under the supervision of Martina Estrada. I will be addressing the clearly established prong of qualified immunity. But first I'd like to address what appears to be the mischaracterization of what happened here so far. This was not a passive or incidental observation. Agent Knoll ordered Shelley to lift her dress and permit visual observation of her breasts and pelvic area before she even used the restroom. And then she required Mrs. Ione to keep her dress lifted the entire time, and refused to afford Mrs. Ione a small measure of dignity by turning a few degrees in another direction. There is not a case with factual similarity here. We agree with the government, but we don't need a case to see that this is unconstitutional. You agree that Sepulveda is not clearly established law where there is same-sex observation? I agree that Sepulveda isn't distinctly factually similar, but Sepulveda and the cases before it are markers of the right to bodily privacy that's been recognized by this court. But isn't Sepulveda similar enough in light of these facts? Yes. Sepulveda is similar enough. The language of Sepulveda indicates that what made the observation so intrusive was the direct, unobscured observation while the plaintiff in that case, Sepulveda, provided a urine sample. But isn't that the problem that the Supreme Court continually refers to, that you can't have a level of generality? It has to be almost a case on four square. When the Supreme Court scrutinizes this court for reading their precedent too broadly, that is usually in the context of excessive force cases where there's dynamic, rapidly evolving circumstances. Here, this occurred about 30 minutes into the search. They had been investigating Mrs. and Mr. Ione for three months. They knew whose home they were going to. They expected them to be there. This is more like an Eighth Amendment case where the constitutional principles apply with obvious clarity. Let me ask you something. Do you agree that in Sepulveda, the observing officer there was violating departmental regulations, whereas here, according to counsel, and I don't think there's any dispute about it, that Agent Knoll was following the IRS regulations. Does that make a difference? Well, I would point out, Your Honor, that the policy here did not say that you could order an individual to lift her dress to permit a strip search, essentially a strip search. That wasn't my question. My question was, is it your position that there was a violation of departmental regulations in Knoll's actions? Yes, because it was... What regulation do you cite for that proposition? What portion of the record? The policy permitted, the reported policy permits to escort an individual into the restroom and that in some instances, a female agent may accompany a female occupant in the restroom. And sometimes the officer may need to maintain the individual in her field of vision. That is not what happened here. She didn't just maintain Miss Ione in her field of vision. She ordered her to lift her dress, which is nowhere supported by this policy. That isn't even Purdue. Maybe I didn't phrase my question correctly. I'm sorry. Would you point to some portion of the regulation which is expressly violated by the observation of Agent Knoll? I'm sorry. Now I understand your... Does it say you can't observe a same-sex person use the bathroom? It does not say that you may not observe. I'm sorry. The observation is not the only issue here. The Supreme Court and... Oh, I'm sorry. The Circuit have held that merely arranging clothing on the body is enough to constitute a strip search. Strip searches tend to only be warranted when there's a search for contraband and there was not a search for contraband here. There was a search for evidence. Michigan v. Summers makes the distinction between a search for evidence and a search for contraband. This is simply not the circumstance where a strip search is warranted. Even if, assuming that a search was supported, which we don't agree, but even if it was, the fact that Ms. Ione needed to keep her dress lifted while Agent Knoll watched from just a few inches away, while she urinated or defecated, is an obvious violation of the principles announced in Franklin. Thank you very much for your presentation. We'll give you two minutes because we took you over in questioning. Thank you, Your Honor. I think the key point here is that there is no case that is closely analogous to what occurred here. Isn't Sepulveda pretty close? I think Sepulveda, I would say, is not close because it was more of a contained situation. It was a parolee urinalysis case. I'd say the more analogous case would be... I'm sorry. In Sepulveda, the person had even less, you know, more, less rights to privacy because it was a parolee and they found that that was beyond the limit of what could have happened in the house. I'm just trying to figure out why, if it wasn't okay in Sepulveda, was it okay here? I think the closer parallel is County of Los Angeles v. Rattell, which was a search case. And I think the cases say, and I see my time is up. May I finish? No, keep going. Thank you, Your Honor. In this case, Shelly Ione was not an innocent bystander, although she was not the target of the investigation. She was named in the warrant and evidence pertaining to her could be seized. So she had a reason to potentially secrete evidence, not only on her own behalf, but that of her husband's. So we're looking at a situation where it's not... But not, even though all of that's true, she wasn't detained? No, she chose to stay. Well... I don't think it turns on whether she... She was on the premises. She certainly wasn't an innocent bystander like Ibarra. She chose to stay, and when she chose to stay, she was subject to the parameters of that choice. Doesn't Safford Unified School District give some broad contours sort of effect here? Because I mean, it seems like the right to be free from invasion of bodily privacy by the government in absence of any reason to suspect that she was dangerous or that she had contraband. You're saying that she... And I guess that's the point you were just making right now. They thought she might have had contraband on her? Yes, that was an objectively reasonable assumption to make. She was in the office when the agent showed up. She saw the agents coming. The offices where most of the evidence was kept, including the computer evidence, she could have secreted small things like a PC card on her person at that time before the agents arrived. And I think, again, the constitutional right at issue is not the right to bodily privacy. I think it has to be phrased in terms of the circumstances, which is execution of a search warrant, weapons had already been a possibility of danger, both to Ione herself and the other agents. Wasn't that completely eliminated by lifting the skirt and doing a pat down? They didn't do a pat down. Yes, yes. And I might also add, Your Honor, if we're getting technical... Did they do a pat down? No, I don't believe they did. No, they didn't. If we're getting technical here, it probably had been very difficult for her to use the toilet if she was wearing a long sundress without it being picked up. Now, I don't know what the circumstances... What degree? I'm sorry? Picked up to what degree? Well, to some degree. And the record is unclear on that. All right. Well, in conclusion, we would ask the court to reverse the district court and to remand with an order to dismiss the complaint against Shelly Ione. Thank you, Your Honors. Thank you very much for your presentation. And the case of Ione v. Noll will be submitted.
judges: Bea, Murguia, Molloy